Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 911 | **DATE** | 7/18/2011 |
| **CASE TITLE** | Metro Premium Wines, Inc. Vs. Winebow, Inc. Et al | | |

**DOCKET ENTRY TEXT**

For the foregoing reasons, Metro's motion to reconsider the Court's June 14 order (Doc. 45) is granted in part and denied in part. By July 27, 2011 Metro will amend its complaint to replead its tortious interference claim as to Winebow. Bogle and Winebow must answer or file a motion to dismiss by August 10, 2011. Any responses to a motion to dismiss must be filed by August 24, 2011, and any replies by August 31, 2011.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Plaintiff Metro Premium Wines, Inc. ("Metro") sued Bogle Vineyards, Inc. ("Bogle") and Winebow, Inc. ("Winebow"), alleging that Bogle and Winebow hatched an improper scheme to turn Metro's distributorship of Bogle's wine in the Chicago area over to Winebow. The fulcrum of the scheme, as alleged by Metro, was a ruse whereby Winebow told Metro that Winebow wanted to buy Metro, and Metro turned over its confidential information, only to have Winebow turn around and use that information to jump start its distribution of Bogle's wine in Chicago. On June 14, 2011, the Court denied Bogle's motion to dismiss the case in favor of arbitration. (Doc. 44.) In the same order, the Court dismissed Metro's tortious interference with prospective economic relations claim against Winebow, noting that Metro conceded that Bogle's national sales manager wanted the Metro-Bogle relationship to end. Metro now asks the Court to reconsider the dismissal of the tortious interference claim. For the below reasons, Metro's motion to reconsider (Doc. 45) is granted in part and denied in part. The Court will not change its ruling but Metro may re-plead its tortious inference claim.

### I. STANDARD

A motion to reconsider may be brought "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996)); *see also Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2005 WL 289967, at *1 (N.D. Ill. Feb. 4, 2005). Thus, a motion to reconsider is appropriate where "a court has patently misunderstood a party, made a decision outside the adversarial issues presented, [or] made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (internal citation omitted). Because judicial opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure" (*Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)), "motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling" (*Zurich Capital Mkts., Inc. v. Coglianese*, 383 F.

Supp. 2d 1041, 1045 (N.D. Ill. 2005)).

## II. DISCUSSION

In the June 14 Opinion, the Court dismissed Metro's claim for tortious interference against Winebow because Metro must allege that Bogle wanted to continue the Metro-Bogle at will relationship, and Metro conceded in its complaint that Bogle's national sales manager, Sam Bon, "was resolved to replace Metro as Bogle's distributor."[1] (Doc. 44 at 13-14); *see Ali v. Shaw*, 481 F.3d 942, 944-45 (7th Cir. 2007) (applying Illinois law and noting "parties to the at-will contract must be willing and desirous of continuing it in order for [a tortious interference claim] to lie when the contract is at-will."). Metro asserts in its motion to reconsider that the Court should not have dismissed its tortious interference claim because Metro pleaded, "on information and belief," that Winebow had a "secret and improper" relationship with Bon that "incentivized him to terminate Bogle's relationship with Metro and replace Metro with Winebow." (Compl. ¶¶ 19, 75.) In other words, according to Metro, "Bogle chose to terminate the relationship *because of* Winebow's interference." (*See* Mot. at 2; emphasis in original.)

As an initial matter, Metro claims it does not have to specifically plead that both Metro and Bogle wanted to continue the at-will relationship. That is incorrect. Though *Ali* was decided at the summary judgment stage, its implication is clear that for at-will relationships, both parties must want the relationship to continue to state a claim for tortious interference. *Ali*, 481 F.3d at 944-45. Such a pleading requirement ensures that competitors to businesses with at-will contracts, which are at-will to maintain flexibility, do not face tortious interference claims from the losing company when the rival competes for, and wins, the business at issue. Put simply, as a matter of common sense a company cannot "reasonably expect[] a valid business relationship," as Metro calls it (Doc. 48, Rep. at 4-5), to continue if the other party to the relationship wants out.

Consequently, Metro must plead that Bogle wanted to continue the at will relationship. Metro alleged that Bon, as national sales manager, wanted to end Bogle's relationship with Metro. In its motion, Metro tries to draw a distinction between what Bon allegedly wanted to do (terminate Metro because he was improperly incentivized) and what Bogle wanted to do (continue the relationship with Metro). There are a two independent Rule 8 problems with Metro's distinction. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'").

First, corporations act through their employees. *See e.g.*, *United States v. One Parcel of Land*, 965 F.2d 311, 316 (7th Cir. 1992). As of now, Metro has plead that a senior employee of Bogle, who had the power to end a distributor relationship, wanted to end the Metro relationship. Metro has not plead any facts that would suggest that Bogle, as a company, wanted the relationship to continue in spite of Bon's wish that it not continue. Metro does not mention anyone else that could overrule Bon or that Bon's decision in this area was not the decision of Bogle as a company. While Metro is entitled to all reasonable factual inferences at this stage of the proceedings, the only reasonable inference from Metro's allegations as they stand now is that Bogle, as a company acting through its senior employee Bon, wanted to end Metro's distributorship. *See Iqbal*, 129 S. Ct. at 1949 (finding a claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.) Indeed, Metro attached to its complaint the termination letter from Bogle, as a company, which contained a laundry list of grievances against Metro.

Second, Metro's general allegation that Bon had a "secret and improper arrangement" with Winebow is simply a conclusion that does not pass muster under Rule 8. *See id.*; *see also Hackman v. Dickerson Realtors,*

| STATEMENT |
|---|

*Inc.*, 595 F. Supp. 2d 875, 885 (N.D. Ill. 2009) (granting a motion to dismiss a tortious interference claim because the plaintiff did not sufficiently plead allegations of impropriety). All Metro pleads is that Bon was acquainted with Winebow because Winebow serves as Bogle's distributor in another part of the country. (*See* Compl. ¶ 19.) Allowing allegations on "information and belief" does not excuse Metro from Rule 8's requirements. The Court cannot reasonably infer a "secret and improper arrangement" from another business relationship. Metro must plead enough facts for the Court to be able to draw a *reasonable* inference that Bon had an improper arrangement with Winebow and that the arrangement impermissibly led to Bogle's decision to terminate Metro.

In its motion, Metro suggests that it could sufficiently plead its tortious interference claim against Winebow and alludes to facts that could get it closer to satisfying Rule 8. Out of an abundance of caution, the Court will give Metro another opportunity to re-plead the claim.

### III. CONCLUSION

For the foregoing reasons, Metro's motion to reconsider the Court's June 14 order (Doc. 45) is granted in part and denied in part. By July 27, 2011 Metro will amend its complaint to replead its tortious interference claim as to Winebow. Bogle and Winebow must answer or file a motion to dismiss by August 10, 2011. Any responses to a motion to dismiss must be filed by August 24, 2011, and any replies by August 31, 2011.

---

1. The Court did not dismiss Metro's tortious interference claim against Winebow as to Metro's relationships with its customers for non-Bogle wine. (*See* Doc. 44 at 14.)